IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| KIMBERLY BRANDT | : | CIVIL ACTION |
| --- | --- | --- |
| v. | : | |
| THOMAS JEFFERSON UNIVERSITY HOSPITALS, INC. | : | NO. 19-1845 |

MEMORANDUM

Bartle, J.                                                                                                                          February 26, 2020

Plaintiff Kimberly Brandt ("Brandt") brings this action against defendant Thomas Jefferson University Hospitals, Inc., ("TJUH") alleging three separate claims in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"): (1) hostile work environment, (2) retaliation, and (3) gender discrimination. Brandt, who is a female, asserts that she was subjected to a hostile work environment, retaliated against for speaking out against her male supervisor, and terminated on the basis of her gender. Before the court is the motion of defendant for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

I

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). We view the facts and draw all inferences in favor of the nonmoving party. See In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

Summary judgment is granted where there is insufficient record evidence for a reasonable factfinder to find for the nonmovant. See Anderson, 477 U.S. at 252. "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." Id. In addition, Rule 56(e)(2) provides "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion." Fed. R. Civ. P. 56(e)(2).

II

The following facts are undisputed. Brandt began working for TJUH's JeffSTAT Education Program ("JeffSTAT") as a program coordinator and instructor in March 2010. JeffSTAT instructors provide individuals with emergency medical services ("EMS") training and education. As an instructor, Brandt's

-2-

duties included managing staff and teaching EMS courses. During the relevant time period, Brandt reported to the manager of the training center, James Gretz ("Gretz") and supervised five employees. During the relevant time period, Guy Barber ("Barber") was the JeffSTAT Senior Director and supervised Gretz.

Beginning in February 2017, TJUH received multiple complaints regarding Brandt's behavior toward students and staff. On February 2, 2017, student Jillian Valentine ("Valentine") sent an email to Gretz complaining about Brandt's behavior toward her that day in class. Valentine stated:

> I am an adult and I deserve respect. I refuse to deal with any abuse that she's giving . . . [t]he rudeness, disrespect, unprofessionalism, and the feeling of being antagonized . . . I'm coming to Jeff Stat to learn not to be treated wrongly while doing so.

During the class at issue, Valentine had confided in Brandt that she did not know how to perform a certain skill at the CPR station. Brandt responded that the skill was demonstrated to the class the previous day. Valentine then approached another instructor, at which point Brandt told Valentine: "if [you do] not know what [you are] doing at this point in time, [you] need to go home and reflect upon why [you are] in the course and [what you are] doing."

After Brandt removed Valentine from class, Valentine went to Gretz's office to file a formal complaint against Brandt. While Valentine was waiting for Gretz to return to his office, Brandt saw Valentine in the hallway, and told her:

> [Y]ou need to leave for the day . . . on top of being disrespectful, giving us a hard time, not following instructions, you can't sit in the hallway and disrupt other students . . . why are you still here? I told you to leave. You need to leave because you don't get it. Go home and think about if you need to be here. You have an attitude cause you are rolling your eyes. So pick your things up and leave.

When Valentine started walking towards Gretz's office, Brandt stood in front of her and said, "the door is that way leave." TJUH suspended Brandt on the same day, pending investigation.

On February 7, 2017, while Brandt was suspended, another student sent an email to Gretz, complaining about Brandt's behavior. The student complained that Brandt refused to tutor her students, despite JeffSTAT policy requiring that instructors provide students with tutoring.

As part of TJUH's investigation, individuals from human resources interviewed relevant witnesses and stakeholders. Barber was responsible for investigating the complaints and deciding whether Brandt should return to work or be terminated. Barber decided to permit Brandt to return to teach on February 20, 2017. Upon her return, Brandt was presented with an

Employee Disciplinary Action form regarding the incident with Valentine. The form, which Brandt signed, informed Brandt that her actions were "in direct contrast" to Jefferson's "values and Code of Conduct." The form also served as Brandt's final warning and cautioned that her employment would be terminated if a similar incident occurred again.

Following Brandt's return, TJUH received four additional complaints against Brandt. Two of these complaints were from students and two were from Brandt's colleagues. The complaints highlighted Brandt's unprofessional behavior, inappropriate use of language, and failure to provide proper instructions. TJUH investigated each complaint and interviewed relevant individuals.

TJUH's Employee Disruptive Conduct Policy and its Code of Conduct require employees to act respectfully and professionally. Any "abusive or offensive behavior, or willful misconduct, which disrupts the smooth and efficient operations" of TJUH is prohibited. As a result of their investigation, TJUH concluded that Brandt had violated TJUH policies by verbally abusing employees and students. TJUH, through Barber, the JeffSTAT Director, terminated Brandt's employment on May 1, 2017.

On February 9, 2017, while Brandt was suspended, Brandt made formal allegations of gender discrimination for the

first time since being employed at TJUH.  She complained to human resources that:  (1) she was being singled out for suspension because she was the only full-time female coordinator in her program; and (2) Gretz said "you can't grab her by the pussy" while referring to a student in Brandt's course during a staff meeting.  Brandt testified that while Gretz made this comment in a joking fashion, it was inappropriate and she was nonetheless offended by it.

Additionally, Brandt testified that she was denied opportunity because of her gender to attend professional leadership and development conferences that her male colleagues were permitted to attend.  She also alleges that Gretz frequently yelled and cursed at her.

Finally, Brandt testified that after her ex-husband ("John") was terminated from TJUH, a rumor circulated that John had caught Brandt performing oral sex on Gretz.  Brandt does not allege that Gretz started the rumor but rather that Gretz knew the rumor upset her and nonetheless perpetuated it by making jokes about it.

TJUH maintains an anti-harassment policy, which prohibits sexual harassment and includes procedures to report such behavior.  TJUH's Policy Prohibiting Unlawful Discrimination, Harassment, and Retaliation states that reports of sexual harassment should be made immediately to the

employee's immediate manager, the Human Resources Service Center, or the compliance hotline.

TJUH conducted an investigation after it received Brandt's complaint. While the investigation found "some inappropriate group discussions amongst JeffSTAT employees," human resources determined that there was insufficient evidence to support the allegations against Gretz.

III

Brandt first asserts that she was suspended and then eventually terminated by TJUH because of her gender. Title VII provides in relevant part:

> It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(1).

To defeat defendant's motion for summary judgment on her claim for gender discrimination under Title VII, Brandt must prove: (1) she was a member of a protected class; (2) she was qualified for the position she sought to retain; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an

inference of discrimination. Jones v. Se. Pa. Transp. Auth., 796 F.3d 323, 327 (3d Cir. 2015).

There is no dispute that Brandt is a member of a protected class as a female, that she was qualified for her position, and that her termination constituted an adverse employment action. Thus, we will focus our inquiry on the fourth prong of the prima facie case, that is, whether Brandt's termination occurred under circumstances that could give rise to an inference of discrimination on the basis of gender.

A plaintiff can demonstrate an inference of discrimination by showing that similarly situated employees not in plaintiff's protected class were treated more favorably. Mandel v. M & Q Packaging Corp., 706 F.3d 157, 170 (3d Cir. 2013). "Similarly situated" means that "purported comparators must have committed offenses of comparable seriousness." Dykes v. Marco Grp., Inc., 222 F. Supp. 3d 418, 427 (E.D. Pa. 2016).

Brandt asserts that the following evidence supports an inference of gender discrimination: (1) Juan Girona ("Girona"), a male co-worker, (who later replaced Brandt) was subject to employee complaints but was not terminated; (2) Gretz yelled at her, made inappropriate jokes, and belittled her; and (3) she was denied opportunities to attend a professional conference that her male counterpart attended with students.

After reviewing the record, we conclude that Brandt has not produced evidence sufficient to show that her termination occurred under circumstances that could give rise to an inference of gender discrimination. First, there is no evidence that Girona engaged in conduct remotely similar to Brandt. Indeed the undisputed facts demonstrate only one complaint against Girona alleging unprofessional behavior. The complaint also states that despite Girona's shortcomings, the complainant was "able to productively work with him." This is different from Brandt's situation, where there are six separate complaints, all suggesting her behavior was beyond repair. Second, while Brandt alleges that Gretz yelled and made inappropriate remarks, she does not allege that he did so only to female instructors and subordinates. There is no evidence that Gretz singled out Brandt on the basis of her gender. Finally, while Brandt was denied from attending one particular conference (which was attended by two students instead of Brandt), TJUH paid for her to attend another conference in 2017. TJUH offered to send her to yet another professional conference, but she declined.

Simply put, the undisputed facts do not suggest that Brandt's employment was terminated due to discrimination in which she was less favored than her male colleagues. By contrast, the record is filled with evidence that suggests her

termination was due to her mistreatment of students and unprofessional behavior toward staff. Accordingly, the court will grant the motion of defendant for summary judgment as to Brandt's claims for gender discrimination under Title VII.

IV

We turn next to plaintiff's claim that her termination was a form of retaliation for speaking out against Gretz. Where there is no direct evidence of retaliation, as here, claims alleging retaliation under Title VII are analyzed under the McDonnell Douglas burden-shifting framework. Moore v. City of Phila., 461 F.3d 331, 342 (3d Cir. 2006). Under this framework, a plaintiff must first establish that: (1) she engaged in a protected activity; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action. Young v. City of Phila. Police Dep't, 651 F. App'x 90, 95 (3d Cir. 2016). A plaintiff can substantiate a causal connection by: (1) showing that temporal proximity between the protected activity and adverse action is unusually suggestive of retaliatory motive; or (2) showing a pattern of antagonism between plaintiff and defendant. Gladysiewski v. Allegheny Energy, 398 F. App'x 721, 723 (3d Cir. 2010). "These are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may

suffice to raise the inference." Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997).

If Brandt succeeds in making out a prima facie case, the burden of production then shifts to defendant to come forward with a legitimate, nondiscriminatory reason for Brandt's termination. See Scheidemantle v. Slippery Rock Univ., 470 F.3d 535, 539 (3d Cir. 2006). If defendant is able to provide such a reason, the burden of production shifts back to Brandt to produce evidence that the proffered reason is merely a pretext for actual discrimination. See Fuentes v. Perskie, 32 F.3d 759, 763-64 (3d Cir. 1994) (citing St. Mary's Honor Center v. Hicks, 509 U.S. 502, 510-11 (1993)). At all times the ultimate burden of persuasion rests with the plaintiff. See id. at 763 (citing Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. at 253, 254, 256 (1981)).

There is no dispute that Brandt engaged in a protected activity by filing a complaint and that she suffered an adverse action through her employment termination. Therefore, we will focus our analysis on the causation element for the prima facie case. After reviewing the record, we conclude that Brandt failed to come forward with any evidence to establish causation.

First, the time between Brandt's complaint (February 9, 2017) and her termination (May 1, 2017) is not suggestive of retaliation. Our Court of Appeals has held that, "[a]lthough

there is no bright line rule as to what constitutes unduly suggestive temporal proximity, a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment." LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 233 (3d Cir. 2007). Brandt asserts that the timing of the termination is unduly suggestive because "atmosphere in the JeffSTAT Education Center was tense" following her return from suspension and that the relationship between Brandt and Gretz was "deteriorating." However, these factual assertions do not provide evidence rising to the level unduly suggestive of retaliation.

Second, Brandt has not presented any evidence showing retaliatory animus or antagonism from TJUH. In contrast, TJUH permitted her to resume her employment after receiving a complaint against her and provided Brandt with the opportunity to keep her employment as long as she did not violate its code of conduct in the future. TJUH terminated Brandt's employment only after receiving four additional complaints and evaluating the results from further investigations.

Third, the record as a whole is devoid of evidence showing causal link between Brandt's protected activity and her termination. It is well established that an employer is permitted to discipline an employee for poor performance and

such conduct cannot be the basis for a retaliation claim without evidence to the contrary. Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 137 (3d Cir.2006).

Even assuming that Brandt had satisfied her prima facie case, TJUH has pointed to a legitimate, nondiscriminatory reason for her termination, that is the six separate complaints against Brandt from students and colleagues. If defendant is able to provide such a reason, the burden of production shifts back to Brandt to produce evidence that the proffered reason is merely a pretext for actual discrimination. See Fuentes v. Perskie, 32 F.3d 759, 763-64 (3d Cir. 1994). To show pretext, plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. Id. at 764.

No reasonable factfinder could conclude that Brandt was terminated for any reason other than her violation of TJUH's Employee Disruptive Conduct Policy and TJUH's Code of Conduct. There is no genuine dispute that: (1) Brandt was suspended after a complaint was filed from student Valentine; (2) that another complaint was lodged against Brandt while she was on suspension; (3) TJUH permitted Brandt to return to work provided

she not violate its policies again; (4) Brandt signed and acknowledged the Employee Disciplinary Action form, which served as a final notification that she would be terminated if a similar incident occurred again; and (5) despite the warnings, TJUH received four additional complaints after Brandt returned from her suspension, all alleging that she engaged in conduct that was in violation of TJUH's Employee Disruptive Conduct Policy and TJUH's Code of Conduct. Brandt has failed to produce any evidence to create a genuine dispute of material fact regarding whether the reasons offered by TJUH for her termination were pretextual.

Accordingly, the court will grant the motion of defendant for summary judgment as to Brandt's claims for retaliation under Title VII.

V

Finally, plaintiff claims she was subjected to a hostile work environment on the basis of gender in violation of Title VII. The factual basis for plaintiff's hostile work environment are: (1) Gretz's comments stating "you can't grab her by the pussy" when referring to a student during a staff meeting; and (2) Gretz perpetuating a rumor between 2016 and 2017 that Brandt's ex-husband was fired after catching Brandt performing oral sex on Gretz.

-14-

To defeat summary judgment on her claims of hostile work environment, plaintiff must show that: (1) she suffered intentional discrimination because of her gender; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected plaintiff; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) the existence of respondeat superior liability. Castleberry v. STI Grp., 863 F.3d 259, 263 (3d Cir. 2017).

When, as here, the alleged hostile work environment does not result in a tangible employment action, a defending employer may raise an affirmative defense to liability. To prevail on the basis of the defense, the employer must prove that: (1) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998).

Proof of an anti-harassment policy typically satisfies the reasonable care element. Ellerth, at 765. TJUH maintains an anti-harassment policy, which prohibits sexual harassment and includes procedures in place to report such harassment. Brandt admits to being made aware of and having access to the procedures afforded by the policy.

-15-

"[P]roof that an employee failed to [exercise] reasonable care to avoid harm . . . will normally suffice to satisfy the employer's burden under the second element of the defense." Id. However, "[i]f a plaintiff's genuinely held, subjective belief of potential retaliation from reporting her harassment appears to be well-founded, and a jury could find that this belief is objectively reasonable, the trial court should not find that the defendant has proven the second Faragher-Ellerth element as a matter of law. Instead, the court should leave the issue for the jury to determine at trial." Minarsky v. Susquehanna Cty., 895 F.3d 303, 314 (3d Cir. 2018).

There is nothing in the record to support the subjective belief of Brandt of potential retaliation from reporting her harassment. Brandt previously used the hotline to file complaints against TJUH and other co-workers in the past, including Gretz. Indeed, Brandt previously called TJUH's compliance hotline to complain and report that Gretz had screamed at instructors. Brandt does not provide any credible evidence as to why she failed to report the hostile work environment (which began sometime in 2016) against Gretz until after she was suspended for misconduct unrelated to her gender. During her deposition, Gretz admits that in her historical dealings with the compliance hotline, she had confidence that if she raised an issue, someone from the administrative body was

going to respond to the complaint.  She claims to have "used [the compliance hotline] multiple times over the course of [her] career" at TJUH.  Nonetheless, she failed to do so regarding hostile work environment until after she was suspended for conduct relating to improper behavior.  "[O]ur case precedent has routinely found the passage of time coupled with the failure to take advantage of the employer's anti-harassment policy to be unreasonable."  Minarsky v. Susquehanna Cty., 895 F.3d 303, 313 (3d Cir. 2018).

     Accordingly, the court will grant the motion of defendant for summary judgment as to Brandt's claims for hostile work environment under Title VII.